UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEDGEYE RISK MANAGEMENT, LLC,<br><br>                            Plaintiff,<br><br>v.<br><br>JOHN DOE(S),<br><br>                            Defendant. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff Hedgeye Risk Management LLC ("Hedgeye"), as and for its Complaint against Defendant John Doe, states as follows:

### THE PARTIES

1. Plaintiff Hedgeye Risk Management LLC ("Hedgeye") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 1 High Ridge Park, Stamford, Connecticut. Hedgeye maintains a place of business at 211 Congress Street, #702, Boston, Massachusetts.

2. Upon information and belief, Defendant John Doe ("Doe") is an individual who may or may not be a citizen and/or resident of the United States of America.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over the claims set forth in this civil action pursuant to *(a)* 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the parties, upon information and belief, are citizens of different states and *(b)* 28 U.S.C. § 1367 because the claims set forth herein form part of the same case or controversy under Article III of

the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because, upon information and belief, Defendant is subject to the personal jurisdiction of this court and the harm alleged by Hedgeye has been suffered, at least in part, in this district, and/or the Defendant is not a resident under § 1391 (c)(3).

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**Hedgeye**

5. Hedgeye repeats and realleges the allegations set forth in paragraphs 1 through 4 above as fully set forth herein.

6. Hedgeye is a premier unbiased investment research and digital media firm providing uncompromised investment research to its institutional customer base who advises over $10 trillion in assets. The Hedgeye research team features some of the world's most well-qualified and highly regarded research analysts, with extensive experience and expansive contacts in the industry.

7. Hedgeye's core business principles are transparency, accountability and trust.

8. Among Hedgeye's research suite is coverage of certain publicly traded companies in the Real Estate Investment Trust ("REIT") industry sector.

9. Hedgeye maintains a private, username and password-protected electronic mail system, which includes the email addresses of current and potential customers and subscribers.

10. Hedgeye uses email in the course of its business operations to communicate with institutional customers.

11. Secure email communication by its personnel internally and to its subscribers has great value to Hedgeye.

**Hedgeye Research Regarding Medical Properties Trust, Inc.**

12. In connection with Hedgeye's ordinary course of business in issuing stock-specific research, Hedgeye's REIT Research Sector added Medical Properties Trust, Inc. ("MPW"), whose securities are traded on the New York Stock Exchange, as a new best short idea, on or about April 12, 2022.

13. Hedgeye adding MPW as a best short idea is a prediction that MPW's stock price will decline from its then stock price of approximately $20.23 as of market open on that day. Since April 12, 2022, it has continuously remained Hedgeye's prediction that MPW's stock price will decline; in other words, remain a "short idea." That prediction remains unchanged as of the date of this filing.

14. Hedgeye's opinion of the fair market value of MPW is based on proprietary financial models, publicly available information about MPW, knowledge and experience in the industry and other market factors.

15. Hedgeye's research is unbiased.  Neither Hedgeye nor its employees hold an interest in the securities issued by Medical Properties Trust, Inc. nor does Hedgeye engage in any sort of investment banking business to obtain or secure fees in the industry.

**Defendant's Fraud**

16. Upon information and belief, on or about October 9, 2022, or at a time certain prior to that date, Defendant improperly and without permission or authorization created an email account, fraudulently, with Google (Gmail), specifically including the name of Hedgeye's REIT Sector Head Analyst.

17. In so doing, Defendant thereby created the false perception that emails

originating from that address were of or relating to information from Hedgeye's REIT Sector Head Analyst.

18. October 9, 2022 was a Sunday; a day on which the New York Stock Exchange was closed. As of the close of markets on October 7, 2022, MPW was trading at $10.14.

19. Upon information and belief, on or about October 9, 2022, Defendant improperly and without permission or authorization sent email(s) to investors Defendant knew, or believed to be, Hedgeye institutional customers.

20. The subject of Defendant's email read "ELLIOT HAS BUILT A POSITION IN ALABAMA."

21. The body of Defendant's email read "Cover asap let friends know no tweeting to prevent squeeze don't email work or text cell because compliance tracks it just meet in person if you can I am around glad this worked so far."

22. Upon information and belief, Defendant knew or had reason to believe the recipients were Hedgeye customers and held short positions in MPW.

23. Upon information and belief, Defendant's reference to "Elliott" in the email is a reference to prominent and known institutional investor, Elliot Investment Management ("Elliott").

24. Hedgeye's REIT Sector Head Analyst has no first-hand knowledge whether or not Elliot has a position in MPW.

25. Upon information and belief, Defendant's reference to "Elliott has built a position in Alabama" is an implication that Elliot Asset Management has taken a long position in MPW, a large REIT public company headquartered in Alabama.

26.     Hedgeye does not write research coverage about any other publicly-traded REIT companies headquartered in Alabama.

27.     Upon information and belief, Defendant's emailing Hedgeye's customers was an effort to manipulate and/or fraudulently induce those customers to "cover" their short position in MPW.

28.     Upon information and belief, Defendant undertook the conduct alleged herein willfully and maliciously and with the intent to harm Hedgeye, its reputation, and its goodwill with its customers.

29.     Upon information and belief, Defendant intended to manipulate the stock price of MPW.

30.     Upon information and belief, Defendant knew or had reason to know, that its recommendation to "cover" the short was in direct contradiction to Hedgeye's research position, thus intended to mislead and confuse Hedgeye customers and tortiously interfere with Hedgeye's business relationships.

31.     Upon information and belief, Defendant, in its impersonation of Hedgeye's REIT Sector Head Analyst, intended to make the fraudulent representation that Hedgeye would engage in securities fraud when writing "don't email work or text cell because compliance tracks it."

32.     Upon information and belief, Defendant falsely implied, and intended to imply, that Hedgeye had disclosed a position in MPW that Elliot held.

33.     Upon information and belief, Defendant undertook the conduct alleged herein, willfully and maliciously with the intent to defraud Hedgeye and its customers and tarnish Hedgeye's reputation and reputation for a commitment to transparency, accountability and trust.

## CLAIMS FOR RELIEF
## COUNT I - FRAUD

34. Hedgeye repeats and realleges the allegations set forth in paragraphs 1 through 33 above as fully set forth herein.

35. At all relevant times, Hedgeye maintained its email communications and addresses and secured it by reasonable means.

36. At all relevant times, Defendant did not have permission or authorization to use any name of any individual employed by Hedgeye in an effort to fraudulent represent that its source of information was Hedgeye.

37. As a direct and proximate result of Defendant's conduct, Hedgeye has suffered damages to its reputation, goodwill, and business relationships with its customers.

38. Defendant has engaged in fraud by means of the conduct set forth herein.

## COUNT II – TORTIOUS INTERFERENCE
## IN BUSINESS RELATIONSHIP

39. Hedgeye repeats and realleges the allegations set forth in paragraphs 1 through 38 above as fully set forth herein.

40. Hedgeye's subscriber agreements impart contractual obligations between Hedgeye and its customers.

41. At all times alleged herein, Defendant engaged in making false claims purporting to come from Hedgeye's REIT Sector Head Analyst, that intentionally misled subscribers/customers of Hedgeye, causing harm to the reputation of Hedgeye.

42. At all times herein, Defendant intentionally interfered with Hedgeye's research and information, the accuracy and transparency of which is the hallmark of Hedgeye's

relationship with its substantial number of customers.

43. At no time did Hedgeye authorize Defendant to interfere with its customers, by and through the fraudulent email address referenced herein.

44. Such interference attempted to harm Hedgeye's ability to uphold its contractual obligations to its clients.

**WHEREFORE,** Plaintiff Hedgeye Risk Management LLC respectfully requests judgment in its favor as follows:

1. On its First Claim for Relief, compensatory damages in the amount five million dollars ($5,000,000.00), or such other amount as may be proved at trial.

2. For an Order and Judgment which temporarily, preliminary, and permanently enjoins Defendant from further communication with the intention to impersonate Hedgeye or its personnel.

3. Recovery of all expenses incurred in respect to this action, including without limitations all attorneys' fees.

4. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

The Plaintiff
Hedgeye Risk Management, LLC
By Their Attorneys,

*/s/ Shawn M. O'Connor*
Shawn M. O'Connor, Esq., BBO# 656221
smo@raipher.com
Raipher D. Pellegrino, Esq., BBO#560614
rdp@raipher.com
Raipher, PC
265 State Street
Springfield, MA 01103
Tel. No.: (413) 746-4400
Fax No.: (413) 746-5353